NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 18 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LAKIESHA MCCALL, Administrator of the Estate of Darius McCall, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> JEREMY JACOBITZ, Officer Badge #9383; BRIANNA MUENZENMEYER; COLTON HAFEN; GEORGE RAMIREZ-MARILLO, <br><br> Defendants-Appellants, <br><br> and <br><br> LAS VEGAS METROPOLITAN POLICE DEPARTMENT; DROCK GAMING, LLC, DBA The D; RAYMOND THOMPSON, <br><br> Defendants. | No.    20-15724 <br><br> D.C. No. 2:18-cv-01319-APG-EJY <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted July 29, 2021
San Francisco, California

---

\*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  McKEOWN and NGUYEN, Circuit Judges, and HUCK,[**] District Judge.

Police officers Jeremy Jacobitz, Brianna Muenzenmeyer, Colton Hafen, and George Ramirez-Marillo (collectively, the "Officers") of the Las Vegas Metropolitan Police Department ("LVMPD") bring this interlocutory appeal after the district court denied them qualified immunity on Darius McCall's[1] § 1983 claim.  We have jurisdiction under 28 U.S.C. § 1291,[2] and we affirm.

On October 10, 2017, the security team of a Las Vegas casino called "The D" informed the LVMPD that McCall may have been dealing drugs in front of The D.  Based on that information, Jacobitz and Muenzenmeyer conducted a *Terry* stop of McCall on the second floor of The D.  After placing McCall in handcuffs, Jacobitz and Muenzenmeyer searched his person for weapons (no weapons were found) and ran a warrant check on him (which came back clean).  About ten minutes into the stop, Jacobitz told McCall that the Officers had "nothing" on him

---

[**]    The Honorable Paul C. Huck, United States District Judge for the U.S. District Court for Southern Florida, sitting by designation.

[1] McCall passed away during the pendency of this appeal.  The administrator of his estate, Lakiesha McCall, has been substituted as the Plaintiff-Appellee.

[2] We reject McCall's jurisdictional challenge, as the Officers' interlocutory appeal turns only on issues of law—whether their conduct during their stop of McCall violated clearly established law.  *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (holding that "determinations of evidentiary sufficiency at summary judgment are not immediately appealable," but challenges concerning an abstract issue of law relating to qualified immunity are immediately appealable); *Knox v. Sw. Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997).

regarding any drug activity. Nonetheless, despite all criminal suspicion justifying the detention having been dispelled, Jacobitz and Muenzenmeyer continued to detain McCall—in handcuffs—solely so that The D could have the opportunity to issue him a trespass warning. A few minutes later, Hafen and Ramirez-Marillo arrived with members of The D's security team, who took several more minutes to issue McCall—still in handcuffs—a trespass warning. Eighteen minutes after the stop began, McCall was finally uncuffed and escorted out of The D by the Officers. McCall was cooperative at all times.

"A district court's decision denying summary judgment on the ground of qualified immunity is reviewed *de novo*." *Sjurset v. Button*, 810 F.3d 609, 614 (9th Cir. 2015) (quoting *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009)). We review the facts in the light most favorable to the nonmoving party. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). In determining if an officer is entitled to qualified immunity, we evaluate whether (i) the alleged facts show a violation of a constitutional right and (ii) the constitutional right was clearly established at the time of the violation. *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 937 (9th Cir. 2020). A right is clearly established if the state of the law at the time of the adverse action gave the officers fair warning that their conduct was unconstitutional. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013). "[I]n an obvious case, [general] standards can 'clearly establish' the

3

answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

The Officers raise three issues in this appeal. <u>First</u>, the Officers argue that they are entitled to qualified immunity for their decision to continue detaining McCall solely so that The D could issue him a trespass warning. We disagree.

It was clearly established in 2017 that a *Terry*-stop detainee must immediately be released once the investigation fails to elicit probable cause to arrest. *Florida v. Royer*, 460 U.S. 491, 500 (1983) (holding that a *Terry* stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop"). It was also clearly established that police officers have no authority to detain someone solely to issue a civil trespass warning (or to allow a private entity to issue a civil trespass warning). *Thomas v. Dillard*, 818 F.3d 864, 875 (9th Cir. 2016) ("[T]he officer must have reasonable suspicion 'the person apprehended is committing or has committed a *criminal offense*.'" (emphasis added) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009))). So, once Jacobitz told McCall that the Officers had "nothing" on him regarding any drug activity, the Officers needed a separate constitutional basis for further detention. The D's private interest in issuing McCall a trespass warning is no such authority—trespass warnings are not *criminal* in nature.

<u>Second</u>, Jacobitz and Muenzenmeyer argue that they are entitled to qualified

4

immunity for their decision (i) to place McCall in handcuffs at the inception of the stop and (ii) to continue handcuffing him for the remainder of the stop. Their arguments are unpersuasive. We recognize that it is sometimes appropriate for police officers to handcuff a *Terry*-stop detainee (say, for police safety). However, "'handcuffing . . . is not part of a typical *Terry* stop'" and requires "special circumstances." *Washington v. Lambert*, 98 F.3d 1181, 1188, 1189 (9th Cir. 1996) (quoting *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982)). Based on the facts presented—which we view in the light most favorable to McCall, *see Isayeva*, 872 F.3d at 946—handcuffing McCall was inappropriate and violated clearly established law. *See Washington*, 98 F.3d at 1192; *Meredith v. Erath*, 342 F.3d 1057, 1062–63 (9th Cir. 2003).

*Third*, Hafen and Ramirez-Marillo argue that they were not "integral participants" of any illegal detention or handcuffing upon their return with The D's security team. We disagree. Hafen and Ramirez-Marillo brought The D's security team over to where McCall was detained so that the security team could decide if they wanted to issue him a trespass warning. And neither Hafen nor Ramirez-Marillo uncuffed McCall until he was finally issued a trespass warning. So, Hafen and Ramirez-Marillo were more than "mere bystanders." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011).

**AFFIRMED.**

5